614 S.E.2d 695

**In re: Estate of Elizabeth M. LEWIS.**

**No. 31778.**

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 8, 2005.

Decided May 20, 2005.

Darrell V. McGraw, Jr., Attorney General, Stephen Stockton, Senior Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellant.

John F. Hussell, IV, Esq., Staci Norman Criswell, Esq., Campbell, Woods, Bagley, Emerson, McNeer & Herndon, PLLC, Charleston, West Virginia, Attorneys for the Appellee.

STARCHER, J.:

In this appeal from the Circuit Court of Fayette County, the State Tax Commissioner appeals a December 30, 2003 order requiring the State of West Virginia to pay interest to a taxpayer on an overpayment of estate taxes, an overpayment that was promptly refunded to the taxpayer upon the taxpayer's request.

After careful consideration of the briefs and arguments of the parties, the statutes and constitutional provisions relied upon by the parties, and all other matters of record, we reverse the circuit court's order.

I.

*Facts & Background*

This case concerns whether the State Tax Commissioner is required to pay interest to a taxpayer, when the taxpayer has overpaid the amount of estate taxes due. The Tax Commissioner concedes that a taxpayer is entitled to interest on an overpayment of taxes, but asserts that the interest only begins to accrue from the date the taxpayer files a formal claim for a refund of the overpayment. The Tax Commissioner also asserts that the Commissioner has a statutory ninety-day grace period from the date of the claim for a refund in which to make the refund. The taxpayer in this case asserts that interest begins to accrue much earlier, at the time of the overpayment of taxes.

Elizabeth M. Lewis died testate on June 1, 1999, and left a substantial estate. Appellee Bank One Trustee Co., N.A., was appointed as the executor of the Estate of Elizabeth M. Lewis ("the Estate"). The Estate analyzed Mrs. Lewis's will and could not determine whether or not Mrs. Lewis had exercised a power of appointment given to her by her deceased husband, J. Edward Lewis, in his will. If Mrs. Lewis had exercised the power of appointment, then certain assets of Mr. Lewis would have been included in Mrs. Lewis's Estate and distributed under the terms of her will to the residuary beneficia-

ries of the Estate. Conversely, if Mrs. Lewis had not exercised the power of appointment, then the assets would have been distributed to certain charitable beneficiaries in accordance with Mr. Lewis's will.

The resolution of the question regarding the exercise of this power of appointment was important not only to the residuary and charitable beneficiaries of the wills, but was also important to the executor's calculation of the federal and state tax liabilities of the Estate. If Mrs. Lewis had not exercised the power of appointment, and the assets at issue passed to the charitable beneficiaries specified in her husband's will, then Mrs. Lewis's Estate would be entitled to a substantial charitable deduction under the federal and state tax codes. Accordingly, in January 2000, the Estate filed a declaratory judgment action to obtain guidance concerning whether or not Mrs. Lewis exercised the power of appointment. The Estate's declaratory judgment complaint named the residuary and charitable beneficiaries as parties.

Thereafter, on February 25, 2000, the Estate paid to the State Tax Commissioner an estimated West Virginia estate tax in the amount of $3,622,102.84.[1] Within the proper time limits, on September 1, 2000, the Estate filed an estate tax return with the Tax Commissioner, and attached to the return a copy of the declaratory judgment complaint. The Estate also attached a form to the tax return indicating that it was likely that some of the assets of the Estate would "qualify for the estate tax charitable deduction[.]"

On February 26, 2001, the parties to the declaratory judgment action reached a settlement agreement to divide the disputed assets in Mrs. Lewis's Estate. Under the agreement, the residuary beneficiaries were to receive 60% of the assets, and the charitable beneficiaries were to receive 40% of the assets. The circuit court entered an order on July 5, 2001, adopting the parties' agreement.

Because 40% of the assets at issue were distributed to charitable beneficiaries, the executor determined that the Estate was entitled to a charitable estate tax deduction on those assets. After calculating that its tax liability was substantially reduced, on January 18, 2002, the Estate filed an Amended West Virginia Estate Tax Return seeking a refund for an overpayment of estate taxes. In response, on January 31, 2002, the State of West Virginia issued a check to the Estate in the amount of $1,504,542.17, solely for the overpayment of estate taxes.

The Estate subsequently filed claims requesting that the Tax Commissioner pay interest on the overpayment of estate taxes, from the date of the overpayment (February 25, 2000) to the date of the refund (January 31, 2002).[2] The Estate sought $347,527.83 for interest plus additional interest to the date of payment of the interest refund. The Tax Commissioner responded and denied the Estate's claims for interest. The Tax Commissioner's decision was later reviewed by the West Virginia Office of Tax Appeals and affirmed.

The Estate then appealed to the Circuit Court of Fayette County. On December 30, 2003, the circuit court issued an order reversing the Tax Commissioner's decision and determining that the Estate was entitled to interest on its overpayment of estate taxes. The circuit court found that the "Legislature has omitted any reference to the State estate tax ... [from the statutes] concerning the payment of interest on the refund of a tax overpayment." Because of this omission, the circuit court found the estate tax code was ambiguous and must be construed in favor of the Estate. The circuit court further determined that it would be an unconstitutional taking of private property without just compensation for the State to use the Estate's overpayment of taxes without compensating the Estate through the payment of interest. Lastly, the circuit court determined that "the

1. The Estate also paid an estimated federal estate tax in the amount of $11,699,325.60 on March 1, 2000.

2. The Estate states that it also sought a refund for the overpayment of estate taxes from the federal government, and in July 2002 received a

check which included the overpayment of the federal estate tax (in the amount of $3,854,381.00) and interest on the overpayment (in the amount of $779,261.82). The interest covered the period from the date of the overpayment, March 1, 2000, to the date of the refund.

State has an implied obligation, indeed a moral obligation, to refund such interest to the Estate."

The circuit court concluded that when the Estate provided a copy of the February 2000 declaratory judgment complaint to the Tax Commissioner in September 2000, that "constituted a defacto 'claim for refund'" that placed the Tax Commissioner on notice of a potential overpayment of estate taxes by the Estate. The circuit court therefore ordered that the Tax Commissioner pay the Estate the full amount of interest demanded.

The Tax Commissioner now appeals the circuit court's order.

## II.

### Standard of Review

■ This case requires us to interpret various statutes contained within our tax code. As the questions presented are purely questions of law, our review of the circuit court's decision is *de novo*. Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

### Discussion

The parties agree that the Estate of Elizabeth M. Lewis properly paid a conservatively estimated amount of estate tax to the State of West Virginia in February 2000, and that the settlement of the power-of-appointment controversy in 2001 entitled the Estate to seek a refund of a portion of that tax. This case is about whether, and to what extent, the Tax Commissioner is required to pay interest to the taxpayer on that refund.

The Tax Commissioner argues that the circuit court erred in ordering the payment of interest to the Estate. First, the Tax Commissioner contends that the circuit court erred in finding that the language of the tax code is ambiguous, and erred in finding that the tax code contains no provisions regarding interest on the overpayment of estate taxes. The Tax Commissioner instead contends that the tax code plainly sets forth the limited circumstances under which a taxpayer is entitled to receive interest, and contends that

the instant case does not include any of those circumstances. The Tax Commissioner asserts that because the tax code clearly specifies when a taxpayer is, or is not, entitled to interest on a refund of overpaid taxes, the circuit court erred in finding an "implied right" to interest.

Second, the Tax Commissioner argues that the circuit court erred in finding that the Estate was entitled to interest on its refund based on the "informal claim" doctrine. And finally, the Tax Commissioner takes the position that the circuit court erred in evaluating the estate tax code under the "takings" clause of the *West Virginia Constitution*, and argues that instead the circuit court should have evaluated the estate tax code under the taxation clause of the *Constitution*. We consider these three arguments in turn.

### A.

### Statutory Authority for Interest on Overpayments of Estate Taxes

The estate tax paid by the appellee Estate in this case was established by the Legislature in Article 11 of Chapter 11 of the *West Virginia Code. See W.Va.Code*, 11–11–1 to – 43. The first provision of Article 11, *W.Va. Code*, 11–11–1 [1985] states that "[t]his article shall be known as the 'West Virginia Estate Tax Act.'"

The Tax Commissioner's first argument is that the Estate is not entitled to interest on its overpaid taxes because, read in its entirety, the Estate Tax Act specifies that the Tax Commissioner has a ninety-day grace period, from the time the claim for a refund is made until the overpayment is returned to the taxpayer, to make a refund. The Tax Commissioner asserts it issued a check to the Estate on January 31, 2002, thirteen days after the Estate made a claim for a refund, and therefore further asserts that the Estate is not statutorily entitled to a refund of interest.

The Estate—using an argument made and accepted by the circuit court—argues that the statutory interest provisions cited by the Tax Commissioner are contained within Article 10 of the tax code, and argues that the

provisions of Article 10 are inapplicable to the Estate Tax Act of Article 11. The Estate therefore argues that its right to interest is governed, not by statute, but by the common law and constitutional law.

We begin our analysis of the parties' arguments regarding the tax code by setting forth several longstanding rules of statutory construction. A cardinal rule of statutory interpretation is that code sections are not to be read in isolation, but construed in context. *See* Syllabus Point 1, *Appalachian Electric Power Co. v. Koontz*, 138 W.Va. 84, 76 S.E.2d 863 (1953) ("A statute is to be applied as written, not construed, where the intention thereof is made clear by the language used when considered in its proper context and as it relates to the subject matter dealt with."); *West Virginia Human Rights Comm'n v. Garretson*, 196 W.Va. 118, 123, 468 S.E.2d 733, 738 (1996) ("A statute is interpreted on the plain meaning of its provision in the statutory context, informed when necessary by the policy that the statute was designed to serve."). On a similar note, as we stated in Syllabus Point 5 of *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975):

> Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Additionally, "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars of the United States*, 147 W.Va. 645, 129 S.E.2d 921 (1963). *In accord*, Syllabus Point 1, *State ex rel. Serdich v. Preston County Bd. of Educ.*, 200 W.Va. 34, 488 S.E.2d 34 (1997). "Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syllabus Point 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938).

It appears to be a general rule that a government is not required to refund taxes that were voluntarily paid, even if those taxes were illegally collected, unless the Legislature has by statute authorized a proceeding to be brought for that purpose. *See, e.g., Ring v. Metropolitan St. Louis Sewer District*, 969 S.W.2d 716, 718 (Mo.1998) ("Though it shocks the equitable conscience, the general rule is well-settled that the sovereign need not refund taxes *voluntarily* paid, but illegally collected."); *Commonwealth v. Safe Deposit and Trust Company of Baltimore, Md.*, 155 Va. 458, 460, 155 S.E. 897, 898 (1930) ("It is well settled by the weight of authority that a tax voluntarily paid cannot be recovered unless the Legislature has by statute authorized a proceeding to be brought for that purpose."). Similarly, most jurisdictions follow the rule that a government is not required to pay interest upon a refund of overpaid taxes in the absence of a statute creating such a requirement. *See, e.g., Library of Congress v. Shaw*, 478 U.S. 310, 317, 106 S.Ct. 2957, 2962–63, 92 L.Ed.2d 250, 259 (1986) (*superseded by statute as recognized in Landgraf v. USI Film Products*, 511 U.S. 244, 251, 114 S.Ct. 1483, 1490, 128 L.Ed.2d 229, 244 (1994)) ("[i]n the absence of a specific provision by contract or statute, or 'express consent . . . by Congress,' interest does not run on a claim against the United States."); *Comptroller of Treasury v. Fairchild Industries, Inc.*, 303 Md. 280, 284, 493 A.2d 341, 342–43 (Md.App. 1985) ("Entitlement to interest on a tax refund is a matter of grace which can only be authorized by legislative enactment."); Syllabus Point 4, *Matter of Midland Industries, Inc.*, 237 Kan. 867, 703 P.2d 840 (1985) ("The choice of the legislature to not provide for the payment of interest on certain refunds while expressly providing for such payment on other refunds indicates an intention to exclude from the omitted refunds the obligation of interest."); *Gregory v. State of California*, 32 Cal.2d 700, 703, 197 P.2d 728, 729–30 (1948) ("[I]t has always been the rule

in California that there is no implied contract of any kind that the state will pay interest on its indebtedness for it is liable only when made so by statute."). *See also*, 72 Am. Jur.2d "State and Local Taxation" § 1001 [2001] ("As a general rule, a taxpayer is not entitled to interest on taxes illegally assessed or charged unless a specific statutory provision expressly authorizes such an award.").

■ Our Legislature has statutorily created in taxpayers both a right to a refund on the overpayment of taxes, and a right to interest on those refunds in certain circumstances. The two statutes creating those rights are found—as the Estate points out—not within the Estate Tax Act in Article 11, but within the West Virginia Tax Procedure and Administration Act in Article 10. The first statute, *W.Va.Code*, 11–10–14(a) [2003], allows a taxpayer to seek a refund of an overpayment of any tax. The second statute, *W.Va.Code*, 11–10–17 [2002] states that a taxpayer is entitled to interest on that refund of overpaid taxes from "the date of the filing by the taxpayer of a claim for refund," but the Tax Commissioner is not required to pay interest if the refund is made "within ninety days after the date of the filing by the taxpayer of a claim for refund." [3]

The circuit court concluded that the refund and interest provisions cited above are inapplicable to the Estate Tax Act in Article 11. However, reading the provisions of Articles 10 and 11 in their entirety, we find that the circuit court erred in so holding. We reach this conclusion because of the existence of two statutes specifying that the procedures contained in Article 10 apply to the Estate Tax Act of Article 11, and vice versa. Within Article 10, *W.Va.Code*, 11–10–3(a) [2004] states:

> The provisions of this article apply to inheritance and transfer taxes, estate tax and interstate compromise and arbitration of inheritance and death taxes . . . .

Likewise, within Article 11 is a statute, *W.Va.Code*, 11–11–40 [1985], which specifies that the procedures contained in Article 10 apply to the Estate Tax Act of Article 11:

> The provisions of the "West Virginia Tax Procedure and Administration Act" set forth in article ten of this chapter, shall apply to the tax imposed by this article with like effect as if said act were set forth in extenso in this article . . . .

We therefore conclude that the provisions of the West Virginia Tax Procedure and Administration Act, *W.Va.Code*, 11–10–1 to –24, apply to the provisions of the West Virginia Estate Tax Act, *W.Va.Code*, 11–11–1 to –43. Furthermore, a taxpayer's right to interest upon a refund of an overpayment of estate taxes paid pursuant to the Estate Tax Act, and the Tax Commissioner's duty to pay such interest, are governed by the provisions of *W.Va.Code*, 11–10–14 and *W.Va.Code*, 11–10–17.

### B.

### *The Meaning of "Claim for Refund"*

■ The Estate takes the position that even if its right to interest is governed by

---

3. *W.Va.Code*, 11–10–14(a) states, in pertinent part:

> *Refunds . . . of overpayments.*—In the case of overpayment of any tax . . . imposed by . . . any of the other articles of this chapter, or of this code, to which this article is applicable, the tax commissioner shall, subject to the provisions of this article, refund to the taxpayer the amount of the overpayment . . . . The refund or credit shall include any interest due the taxpayer under the provisions of section seventeen of this article.

The statute that establishes the Tax Commissioner's duty to pay interest on overpayments, but which also allows the Tax Commissioner a ninety-day grace period, is *W.Va Code*, 11–10–17(d) and (e), which states in pertinent part:

> (d) *Overpayments*.Interest shall be allowed and paid at the annual rate of eight percent per annum upon any amount which has been finally administratively or judicially determined to be an overpayment in respect of each tax administered under this article . . . The interest shall be allowed and paid for the period commencing with the date of the filing by the taxpayer of a claim for refund . . . with the tax commissioner and ending with the date of a final administrative or judicial determination of overpayment. . . .
>
> (e) *Applicable rules.*For purposes of this section:
>
> (1) *No interest payable on tax refunded . . . within ninety days after claim for refund . . . is filed.*—In the event of the overpayment of any tax administered under this article . . . where the tax commissioner issues his or her requisition . . . within ninety days after the date of the filing by the taxpayer of a claim for refund . . . no interest shall be allowed under this section.

*W.Va.Code,* 11–10–14 and –17, it is still entitled to interest on its overpayment of estate taxes. The Estate argues that a "claim for refund" was made on September 1, 2000, when the Tax Commissioner was placed on notice of the potential overpayment of estate taxes in February 2000. The Estate points out that the Tax Commissioner has not issued any regulations governing how a taxpayer is to file a "claim for refund" of the overpayment of estate taxes, and therefore argues that this Court should adopt an "informal claim" doctrine to allow a claim for refund to be filed by any means.

■ The "informal claim" doctrine has been used by federal courts in a series of cases addressing whether taxpayers had properly or timely submitted claims for refunds. The doctrine has its roots in *U.S. v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132, 138 (1941), where the Court noted that an informal claim for a refund may be sufficient to put the government on notice of the existence of a claim where the formal defects in the claim are later remedied, often after the statutory filing period has passed. An informal claim is some form of filing that furnishes sufficient information to allow the IRS to make a reasonable and intelligent investigation and evaluation of the taxpayer's claim. *American National Bank & Trust Co. v. U.S.* 594 F.2d 1141, 1143 n. 1 (7th Cir.1979).

The Estate asserts that the Tax Commissioner was informally placed on notice of its claim for refund by the Estate's attachment of a copy of the complaint for declaratory judgment to its estate tax return. Also included with the estate tax return was a form which stated "[i]n the event that Ms. Lewis did not exercise the power of appointment, it is likely that the assets in the J. Edward Lewis Marital Trust will qualify for the estate tax charitable deduction under I.R.C. § 2055." In other words, the Estate argues that by September 1, 2000, a claim for refund had been filed because the Tax Commissioner was on notice that the Estate had overpaid some undetermined amount of estate taxes in February 2000, and that the Estate would likely be entitled to a refund.

The Tax Commissioner, however, argues that the documents provided by the Estate merely put the State on notice of the "possibility" that the Estate would be entitled to a refund. The Tax Commissioner argues that the mere possibility that a refund may be appropriate at some undetermined time and in some undetermined amount, depending on the unknown future outcome of litigation, cannot reasonably serve as a "claim for refund." The Tax Commissioner points to the outcome of the Estate's declaratory judgment action as an example of the nebulous nature of the Estate's "claim." Though the declaratory judgment action was filed because of the existence of an "either-or" situation between two sets of parties making a claim to estate assets (either the residuary beneficiaries or the charitable beneficiaries were entitled to the assets, not both), the action was resolved with both sets of parties settling and splitting the assets 60–40.

Further, the Tax Commissioner argues that the cases cited by the Estate regarding the informal claim doctrine did not address whether a taxpayer was entitled to interest on a refund, but only the taxpayer's entitlement to a refund of an overpayment. Instead, the Tax Commissioner cites recent cases—including by the U.S. Supreme Court—which, the Commissioner contends, bring such equitable doctrines into question. *See U.S. v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997); *BCS Financial Corp. v. U.S.,* 118 F.3d 522, 525–27 (7th Cir.1997).

In summary, the Tax Commissioner asserts that a taxpayer makes a "claim for refund" by filing documentation demanding a certain refund of a certain amount of overpaid taxes. The Tax Commissioner asserts that mere knowledge by the Tax Commissioner, through the filing of an "informal claim" suggesting that there may be grounds for a refund of an uncertain amount at some undetermined date in the future, does not constitute a claim for refund. We agree.

The Supreme Court of Wyoming, addressing a taxpayer's claim for interest on a refund of an overpayment of property taxes, has suggested that for a taxpayer's claim for refund to be valid and invoke a right to

interest, at the very least the refund amount claimed by the taxpayer should be of a certain, liquidated sum. Additionally, there should be notice to the government of the claim to a refund, and an opportunity for the government to contest that claim. To hold otherwise would be to go beyond a level playing field and allow the taxpayer an advantage not available to the government:

> Appellant contends that, since the County has a right to interest [on delinquent taxes], it would be arbitrary and unfair to deny him access to that remedy. While interest is indeed available to the County on delinquent taxes, the availability of that remedy is contingent upon three factors: the amount of that delinquency must be liquidated; the taxpayer must receive notice of the claimed delinquency; and the taxpayer must be given an opportunity to contest that claim. Appellant's entitlement to interest on his refund should be subject to similar conditions. Appellant here does not seek parity with the County; he seeks an advantage. The County's denial of that advantage was not arbitrary, capricious, nor an abuse of its discretion.

*Matter of Black*, 775 P.2d 484, 489 (Wyo. 1989). In a similar fashion, the Kansas Supreme Court stated that in the absence of statutory authority, a taxpayer has no right to interest on a refund, and interest only begins to accrue once the amount and due date of the refund become certain:

> The general rule is that an unliquidated claim for damages does not draw interest until liquidated. A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation.

*In the Matter of Midland Industries, Inc.*, 237 Kan. 867, 868, 703 P.2d 840, 842 (1985) [citation omitted].

Our Legislature has chosen to allow a nine-month grace period after the date of a decedent's death for the decedent's estate to pay any tax liability before interest begins to accrue. *W.Va.Code*, 11–11–15(a) [1985]. As was previously discussed, the Legislature has established a statutory system whereby the taxpaying estate may seek a refund of an overpayment of estate taxes, and may receive interest on the overpayment. *W.Va.Code*, 11–10–14 and –17. However, like the taxpayer, the Tax Commissioner is also allowed a grace period of ninety days from the date a claim for refund is filed before interest begins to accrue.

We recognize that the Tax Commissioner has left room for some confusion in this area by not adopting regulations defining "claim for refund," or adopting forms for taxpayer use. *See W.Va.Code*, 11–10–14(h) [2003] ("The tax commissioner may prescribe by rule or regulation the forms for claims for refund[.]") But if we were to adopt the arguments of the Estate regarding an "informal claim," we would essentially be imposing a double standard upon the Tax Commissioner. The Tax Commissioner cannot statutorily charge a taxpayer with interest before the tax liability is capable of calculation. But the taxpayer in this case is essentially arguing it is entitled to interest from the Tax Commissioner, even though the Tax Commissioner was not clearly notified of the taxpayer's right to a refund, and the refund amount was uncertain. We decline the Estate's invitation to give the tax code such a cockeyed interpretation.

■ We therefore hold that under *W.Va. Code*, 11–10–14 and *W.Va.Code*, 11–10–17, a "claim for refund" is made on the date the State receives a taxpayer's written notification that clearly demands repayment to the taxpayer of either a specific amount of taxes previously paid, or an amount definitely ascertainable by mathematical calculation.

Applying this standard to the facts of this case, we hold that the circuit court erred in ruling that the documents filed by the Estate in September 2000 with the Tax Commissioner constituted a claim for refund. Those documents only placed the Tax Commissioner on notice of the possibility that the Estate might be entitled to a refund of an undetermined and incalculable amount of taxes at some undetermined future date. Instead, we believe that the Estate first made a proper "claim for refund" on January 18, 2002, when it filed an amended tax return with the Tax

Commissioner. On that date, written notification to the Commissioner demanded a refund of a specific amount of estate taxes previously paid by the Estate. This documentation was specific and certain enough to trigger an investigation of the taxpayer's claim, such that the Tax Commissioner responded and issued a refund to the Estate within two weeks.

## C.

### Constitutional Issue

■ The Tax Commissioner's final argument centers upon the circuit court's holding that the State's failure to pay interest on a refund from the date of the taxpayer's overpayment constitutes a "taking of private property without just compensation" in violation of Article III, Section 9 of the *West Virginia Constitution*. Article III, Section 9 provides:

> Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporation, the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law; provided, that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders.

The Estate asserts that as a general matter, when the State has the use of a taxpayer's money to which it is not entitled, the State should compensate the taxpayer for the use of such money. By refusing to pay interest on a taxpayer's overpayment of taxes, the Estate contends that the Tax Commissioner is taking the taxpayer's private

property without just compensation. The Estate contends that "just compensation" for the overpaid taxes taken by the State for public use would be interest, some fair measure for the use of the taxpayer's property between the time of the taking and the time of repayment.

The Tax Commissioner, however, argues that Article III, Section 9 does not apply to the issue of taxation. Relying upon the interpretations of similar constitutional provisions by other state and federal courts, the Tax Commissioner asserts that taxation issues have never been governed by the "takings" clause of any constitution, and that the circuit court erred in holding otherwise. We agree.

■ Article X, Section 5 of the *West Virginia Constitution* expressly vests the power of taxation in the Legislature.[4] We stated in *Mackin v. Taylor County Court*, 38 W.Va. 338, 339–40, 18 S.E. 632, (1893) that even in the absence of such a constitutional expression, "[i]t would be its prerogative without the grant. The duty of ascertaining taxable values, and of imposing and assessing taxes, rests in the wisdom and discretion of the legislature."

> That important function of government, the assessment of taxes, in our free republic of America, national and state, unlike the case in imperial or autocratic governments, belongs exclusively to the legislature. It is a legislative power, and in no sense judicial. This doctrine results from the very nature of our government, and is universally recognized.

*Id.* The power to lay and collect taxes

> ... not only includes prescribing the basic rates of taxation, the time and manner in which taxes are to be paid; but also includes the means and methods for making refunds—with or without interest, which must be viewed realistically as no more than one function of the overall rate of such exaction.

---

4. Article X, Section 5 of the *West Virginia Constitution* states:

    § 5. Power of Taxation
    The power of taxation of the legislature shall extend to provisions for the payment of the state debt, and interest thereon, the support of free schools, and the payment of the annual

estimated expenses of the State; but whenever any deficiency in the revenue shall exist in any year, it shall, at the regular session thereof held next after the deficiency occurs, levy a tax for the ensuing year, sufficient with the other sources of income, to meet such deficiency, as well as the estimated expenses of such year.

**58**

*Jacobs v. Gromatsky,* 494 F.2d 513, 514 (5th Cir.1974).

Courts universally have concluded that the takings clauses of the various state and federal constitutions do not apply in the context of taxing statutes, because the power to tax is a separate constitutional power from the power to take property by eminent domain. Case law from the United States Supreme Court and federal and state courts throughout the country makes clear that the constitutional takings clause is not a limitation upon the taxing power conferred upon legislatures by their respective constitutions. *See Brushaber v. Union Pacific Railroad Co.,* 240 U.S. 1, 24, 36 S.Ct. 236, 244, 60 L.Ed. 493, 504 (1916) (the Due Process Clause of the Fifth Amendment "is not a limitation upon the taxing power conferred upon Congress by the Constitution[.]"); *Branch v. U.S.,* 69 F.3d 1571, 1576 (Fed.Cir.1995) ("[E]ven though taxes . . . indisputably 'take' money from individuals or businesses, assessments of that kind are not treated as *per se* takings[.]"); *A. Magnano v. Hamilton,* 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934) (taxing power of state or federal government not considered a taking under the Fifth or Fourteenth Amendment); *Pendell v. Department of Revenue,* 315 Or. 608, 612–13, 847 P.2d 846, 849–50 (1993) ("[T]his present case involves the taxation power, not the eminent domain power of the government. The takings clauses of the state and federal constitutions are not dispositive nor the appropriate basis for starting an inquiry. As to the taxpayers in this case, government's action was to tax, not to take.").

██ We conclude that the constitutional power of taxation is vested in the Legislature by virtue of Article X, Section 5 of the *West Virginia Constitution.* That power includes not only the power to establish the basic rates of taxation and the time and manner in which taxes are to be paid, but also includes the means and methods for making refunds, with or without interest.

As a practical matter, by denying the taxpayer in this case interest upon a refund, the provisions of *W.Va.Code,* 10–11–17 in effect amount to an increase in the taxpayer's estate tax rate. Whether that increase was or was not fair to the taxpayer is a matter entirely within the discretion of the Legislature. We can only say that, in this instance, the actions of the Tax Commissioner in refusing to pay interest to the Estate in compliance with *W.Va.Code,* 10–11–17 were permissible under the *West Virginia Constitution.*[5]

**IV.**

*Conclusion*

For the reasons set forth above, the circuit court's December 30, 2003 order is reversed, and the case is remanded for further proceedings.

Reversed and Remanded.

---

5. We are aware that "[t]akings law has been criticized as lacking in doctrinal rigor and predictability." *Branch v. United States,* 69 F.3d at 1583. However, we are also aware of the chaos that might ensue should takings law be haphazardly extended to the taxation system. Most taxes are paid by taxpayers on a pay-as-you-go system with taxes paid to the government during the year. However, it is not until the year's end that the taxpayer and government can calculate the taxpayer's exact tax liability, a system that often results in the taxpayer being entitled to a refund. A strict application of takings jurisprudence would mandate that the government hold rather than spend taxpayer dollars, in anticipation of the possibility of having to pay some taxpayers interest on those refunds. Courts are naturally hesitant to impose such nebulous restraints on the public fisc. *See* Jeremy R. Polk, "Compensation for the Fruit of the Fund's Use: The Takings Clause and Tax Refunds, 98 Nw. U.L.Rev. 657 (2004)".