728 S.E.2d 155

**STATE of West Virginia, Respondent**

v.

**Brian John STONE, Petitioner.**

No. 11–0519.

Supreme Court of Appeals of West Virginia.

Submitted March 27, 2012.

Decided June 21, 2012.

Stephanie J. Shepherd, Hedges, Lyons & Shepherd, Morgantown, WV, for the Petitioner.

Darrell V. McGraw, Attorney General, Laura J. Young, Office of Attorney General, Charleston, WV, and Marcia Ashdown, Perry DeChristopher, Office of the Prosecuting Attorney, Morgantown, WV, for the Respondent.

McHUGH, J.:

By order entered November 16, 2010, the Circuit Court of Monongalia County re-sentenced Appellant Brian John Stone with regard to his conviction and sentence on twenty-six charges stemming from an alcohol-related automobile accident in which five people died and seven others were injured. In this appeal, Appellant challenges his multiple punishments for leaving the scene of an accident resulting in injury or death; the trial court's order denying his motion to suppress evidence of his blood alcohol content; and the sufficiency of the evidence on the charges of DUI causing death and leaving the scene of the accident.

Upon careful consideration of the briefs and arguments of the parties, the record below and the applicable legal authority, and for the reasons stated herein, we affirm, in part, and reverse, in part, the November 16, 2010, order of the circuit court, and remand this case, with instructions.

### I. Facts and Procedural History

On July 8, 2007, sometime after 10:00 p.m., Appellant was driving his Ford F–150 truck eastbound on Interstate 68 in Monongalia County, West Virginia. Witness Daniel Greathouse was driving in front of Appellant in the same direction and observed Appellant's truck in his rearview mirror. Mr.

Greathouse, who estimated his own speed at eighty miles per hour, estimated that Appellant was driving at a speed close to ninety miles per hour. Mr. Greathouse testified that both he and Appellant were traveling in the right lane and another car, a Ford Taurus driven by Cortney Evans, was traveling a car length's distance ahead of Mr. Greathouse in the left lane. According to Mr. Greathouse, Appellant passed him in the left lane and as Appellant's truck re-entered the right lane in front of Mr. Greathouse, the back end of Appellant's truck began swerving back and forth, hitting Mr. Evans' car. Witness Jamie Porter, who was driving westbound on Interstate 68, testified that she observed Appellant's truck try to "shimmy its way through" into the left lane.

Sheena Evans, Mr. Evans' wife and front seat passenger, testified both she and her husband observed that Appellant's truck began moving over into their car in the left lane. As Mr. Evans tried to avoid Appellant's truck, Mrs. Evans observed her husband "trying to hold the wheel steady. He was holding the wheel so hard, and the truck just would not get off of us at all. He would not let us alone, and he just kept pushing and pushing." According to Mrs. Evans, the contact took the car "like a bullet and shot us clear over", across the median to the opposite side of the highway. After crossing the median, Mr. Evans' car crashed into a sport utility vehicle being driven westbound by Donnell Perry.

For Appellant's part, his theory at trial was that the right front tire of his truck blew out, causing him to lose control of his vehicle, or "fishtail." He testified that his truck "suddenly pulled to the right and then I counter-steered, of course to stay on the highway, to the left, and I believe that is when my truck and the Taurus ... came into contact, when I counter steered." In contrast to Appellant's testimony, however, Sergeant William Yaskoweak, who testified as an expert in accident reconstruction, indicated that there was no physical evidence that the right front tire on Appellant's truck had blown out.

As a result of the accident, Mr. Evans and his son were killed as were Mr. Perry and two of his daughters. Mrs. Evans and another son were injured and Marcia Perry, Mr. Perry's wife, and four other children in their vehicle were also injured.

Meanwhile, Mr. Greathouse testified that after Appellant's truck made contact with Mr. Evans' car, Appellant's truck rolled over at least one time. The truck then went over an embankment and landed in a culvert approximately 200 yards away. Appellant's truck was found with the engine running, in gear, with its lights on and with the passenger-side door open. Deputy David Wilfong of the Monongalia County Sheriff's Department testified that he observed Appellant hitchhiking in the opposite direction of the accident scene, approximately one-half mile away.

As Deputy Wilfong approached Appellant, he observed his eyes to be bloodshot and glassy. He further observed that Appellant was having trouble standing and was swaying back and forth. According to Deputy Wilfong, he smelled the odor of alcoholic beverage on Appellant's breath and person. When asked if he had been in an accident, Appellant replied in the negative. However, Appellant admitted that he had been drinking forty to forty-five minutes earlier. Deputy Wilfong administered three different field sobriety tests on Appellant. Upon failing all three tests, Appellant was placed under arrest at approximately 10:45 p.m.

Thereafter, while at the Monongalia County Sheriff's Department, Appellant twice refused to submit to the intoximeter breath test. As a result, officers requested a search warrant for a sample of Appellant's blood in order to obtain his blood alcohol content level. The Monongalia County magistrate on call found probable cause and issued the requested warrant. Tests completed on Appellant's blood sample less than two hours after his arrest revealed that he had a blood alcohol concentration of .23, almost three times the legal limit.

Appellant was tried and convicted on twenty-five charges relating to the accident: one count of DUI; five counts of DUI causing death; seven counts of DUI causing injury; five counts of leaving the scene of an accident

causing death; and seven counts of leaving the scene of an accident causing injury.[1] The trial court ordered the sentences therefor to run consecutively to each other.

Thereafter, Appellant filed post-trial motions in arrest of judgment and for post-verdict judgment of acquittal or new trial. Both motions were denied. By order entered November 16, 2010, the trial court entered a Re–Sentencing Order, which re-sentenced Appellant to allow opportunity for appeal of his convictions because a direct appeal thereof had never been filed. This appeal followed.

## II. Discussion

### A. Leaving the Scene of an Accident Resulting in Injury or Death

The first issue for our review is whether, as a matter of law, the driver of a vehicle who leaves the scene of an accident resulting in injury to or death of more than one person may be convicted of and sentenced for multiple violations of West Virginia Code § 17C–4–1 (1999). It is Appellant's contention that West Virginia Code § 17C–4–1 is ambiguous in this regard and that, under the rule of lenity, the statute must be strictly construed against the State and in favor of Appellant.

West Virginia Code § 17C–4–1 (1999) provides, in relevant part:

(a) The driver of any vehicle involved in an accident resulting in injury to or death of *any person shall immediately stop the vehicle at the scene of the accident* or as

close thereto as possible but shall then forthwith return to and *shall remain at the scene of the accident until he or she has complied with the requirements of section three [§ 17C–4–3] of this article:* Provided, That the driver may leave the scene of the accident as may reasonably be necessary for the purpose of rendering assistance to an injured person as required by said section three. Every such stop shall be made without obstructing traffic more than is necessary.[2]

(Emphasis and footnote added)

Pursuant to the above, in addition to stopping the vehicle at the scene of the accident, the driver is required to comply with the provisions of West Virginia Code § 17C–4–3(1998), which provides as follows:

The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his or her name, address and the registration number of the vehicle he or she is driving and shall upon request and if available exhibit his or her driver's license to the person struck or the driver or occupant of or person attending any vehicle collided with *and shall render to any person injured in such accident reasonable assistance,* including the carrying, or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is

---

1. Appellant was indicted on the additional charge of driving while license suspended or revoked for DUI, third or subsequent offense. Appellant moved to bifurcate this charge as well as count one of the indictment, DUI, third or subsequent offense. The trial court granted the motion to bifurcate the driving while license suspended charge and, with regard to count one, the parties agreed that, at trial, the State would not refer to any previous DUI convictions or to the current DUI charge as a third or subsequent offense. Appellant subsequently pled guilty to the charge of driving while license suspended or revoked, third or subsequent offense.

2. West Virginia Code § 17C–4–1 further provides:

(b) Any person violating the provisions of subsection (a) of this section after being involved in an accident resulting in the death of any

person is guilty of a felony and, upon conviction thereof, shall be punished by confinement in a correctional facility for not more than three years or fined not more than five thousand dollars, or both.

(c) Any person violating the provisions of subsection (a) of this section after being involved in an accident resulting in physical injury to any person is guilty of a misdemeanor and, upon conviction thereof, shall be punished by confinement in a county or regional jail for not more than one year, or fined not more than one thousand dollars, or both.

(d) The commissioner shall revoke the license or permit to drive and any nonresident operating privilege of any person *convicted pursuant to the provisions of this section for a period of one year.*

In this opinion, we refer to the versions of West Virginia Code §§ 17C–4–1 and –3 in effect at the time the events herein transpired.

necessary or if such carrying is requested by the injured person.

(Emphasis added)

It is the State's contention that West Virginia Code § 17C–4–1 requires a driver to stop and remain at the accident scene until he or she has complied with *all* of the requirements set forth in West Virginia Code § 17C–4–3. According to the State, under West Virginia Code § 17C–4–3, a driver of a vehicle involved in an accident shall, among other things, render to "any person" injured in such accident reasonable assistance, which the State argues required Appellant to render aid to each and every one of the victims in this case.

■ The particular issue for our review requires that we interpret West Virginia Code § 17C–4–1. " 'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 2, *Osborne v. U.S.*, 211 W.Va. 667, 567 S.E.2d 677 (2002). Furthermore, it is well settled that "[i]n construing an ambiguous criminal statute, the rule of lenity applies which requires that penal statutes must be strictly construed against the State and in favor of the defendant." Syllabus point 5, *State ex rel. Morgan v. Trent,* 195 W.Va. 257, 465 S.E.2d 257 (1995). In this regard, we have explained that "[t]he rationale for the rule of lenity is to preclude 'expansive judicial interpretations [that] may create penalties for offenses that were not intended by the legislature.' " *Id.* at 262, 465 S.E.2d at 262 (*quoting State v. Brumfield,*

178 W.Va. 240, 246, 358 S.E.2d 801, 807 (1987)). *See State v. Sears,* 196 W.Va. 71, 81, 468 S.E.2d 324, 334 (1996) (stating that "when the Legislature fails to indicate the allowable unit of prosecution and sentence with clarity, doubt as to legislative intent should be resolved in favor of lenity for the accused"). Finally, we note that "lenity does not foreclose a court from looking 'not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.' " *Trent,* 195 W.Va. at 263, 465 S.E.2d at 263 (*quoting Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)).

West Virginia Code § 17C–4–1 requires a driver involved in any accident resulting in injury or death to stop and remain at the scene until he or she has complied with the requirements of West Virginia Code § 17C–4–3. The State argues that the specific requirement in West Virginia Code § 17C–4–3 that the driver "shall render to *any person* injured ... reasonable assistance" required Appellant to render aid to *every* victim in this case.

■ Indeed, interpretation of West Virginia Code § 17C–4–1's reference to the requirements of West Virginia Code § 17C–4–3 thus "turns upon the use of the word 'any' in conjunction with the use of the singular, rather than plural tense of the statute." *Williams v. W.Va. Dept. of Motor Vehicles,* 187 W.Va. 406, 409, 419 S.E.2d 474, 477 (1992). In *Williams,* we recognized the various meanings of the word "any" and, with regard to the statute at issue in that case, settled on the meanings "one" or "either." [3]

3. In *Williams,* the Department of Motor Vehicles suspended for ninety days the driver's licenses of both co-owners of a motor vehicle (husband and wife) when their son was cited for driving it without valid motor vehicle liability insurance. The husband appealed his suspension on the ground that, under the applicable statute, the legislative intent was that if a motor vehicle is registered in more than one name, the driver's license of only one of the owners shall be suspended. The applicable statute then in effect, West Virginia Code 17D–2A–7(a) (1988), stated that

"*[a]ny owner* of a motor vehicle ... who fails to have the required security in effect at the time such vehicle is being operated upon the

roads or highways of this State shall have *his* operator's ... license suspended ... for a period of ninety days and shall have *his* motor vehicle registration revoked until such time as *he* shall present ....proof of security required by this article."

187 W.Va. at 409, 419 S.E.2d at 477. The events in *Williams* transpired before the addition of a proviso to the statute which included specific language that only one driver license shall be suspended if the motor vehicle is registered in more than one name. This Court held that, based upon the use of the word "any" in a singular context in the statutory version at issue, the addition of the proviso in the subsequent

187 W.Va. at 409, 419 S.E.2d at 477. We explained that

> [i]t is clear from the authorities [on the meanings of the word "any"] cited herein that "any" may be used in either a singular or plural form. In this instance, the legislature has used "any" in a singular context. All references to when the statute is applicable are in the singular. Furthermore, the legislature could easily have chosen the word "all," which much more clearly stresses a plural form than "any," when wording the statute.

187 W.Va. at 409–10, 419 S.E.2d at 477–78. Thus, we held that " '[t]he word "any," when used in a statute, should be construed to mean any.' Syl. pt. 2, *Thomas v. Firestone Tire & Rubber Co.*, 164 W.Va. 763, 266 S.E.2d 905 (1980)." *Williams*, at syl. pt. 4, 187 W.Va. at 407, 419 S.E.2d at 475.

With regard to West Virginia Code § 17C–4–1 and its reference to West Virginia Code § 17C–4–3, we interpret "any" in a similar manner. West Virginia Code § 17C–4–1 refers to "[t]he driver of any vehicle involved in an accident resulting in injury to or death of *any person*," requiring the driver to stop at the scene of the accident and remain until he or she has complied with the requirements of West Virginia Code § 17C–4–3. West Virginia Code § 17C–4–3, in turn, requires the driver to give certain information "to *the person* struck or *the driver* or *occupant* of or *person* attending any vehicle collided with and shall render to *any person* injured ... reasonable assistance." West Virginia Code § 17C–4–1 and its reference to West Virginia Code § 17C–4–3 employ " 'any' in a singular context" and "[a]ll references to when the statute is applicable are in the singular." *Williams*, 187 W.Va. at 409–10, 419 S.E.2d at 477–78. Moreover, "the legislature could easily have chosen the word 'all,' which much more clearly stresses a plural form than 'any,' when wording," *id.*, that portion of West Virginia Code § 17C–4–3 requiring the driver to "render to any person injured ... reasonable assistance." Accordingly, applying the rule of lenity, we interpret West Virginia Code § 17C–4–1 to mean that a driver of a vehicle involved in an accident

resulting in injury or death may be punished only once for leaving the accident scene regardless of the number of injuries or deaths resulting therefrom.

Our interpretation of West Virginia Code § 17C–4–1 is in accordance with a majority of other jurisdictions which have construed statutes similar to West Virginia's. In *State v. Ustimenko*, 137 Wash.App. 109, 151 P.3d 256, (2007), the State charged the defendant driver with three counts of hit-and-run, one count each for injuries to the driver of the other vehicle and to her baby who was a passenger, and a third count for damage to a sign post. The State cross-appealed the lower court's dismissal of two of the three counts. On appeal, the court in *Ustimenko* explained that the

> hit-and-run statute, RCW 46.52.020, may be violated in two ways: either by unlawfully leaving the scene of an accident resulting in injury to or death of "any person," or by unlawfully leaving the scene of an accident resulting in damage to a vehicle or other property. *In either case, the driver involved in the accident must remain at the scene of the accident to give his or her identification information and to render assistance to "any person injured in such accident."*

151 P.3d at 259 (emphasis added). Indicating the Washington statute to be ambiguous as to the number of counts that can be charged for failing to render assistance, the court stated that "[a]lthough the legislature apparently intended to impose a duty to render assistance to all injured persons, it is not clear whether the defendant should be liable for each injured person he or she fails to assist." *Id.* at 259–60 (internal citations omitted). Indeed, "in deciding whether a statute can be violated multiple times in the same incident, the court must determine the scope of a criminal act (the unit of prosecution). If the unit of prosecution is not clearly indicated, the rule of lenity must be applied." *Id.* at 260 (internal citation omitted). Thus, the court in *Ustimenko* concluded that the applicable Washington statute

version was merely a clarification of the existing statute. *Id.* at 409, 419 S.E.2d at 478.

authorizes the imposition of only one conviction when multiple people and items of property are damaged by a driver's failure to stop, identify himself or herself, and render assistance. The unit of prosecution is the act of leaving the scene of an accident without giving assistance and the required information, *not the failure to give assistance and information to a particular individual.*

*Id.* (emphasis added).

In *People v. Newton,* 155 Cal.App.4th 1000, 66 Cal.Rptr.3d 422 (2007), the California Court of Appeals considered a petition for writ of mandate relating to an order which consolidated four counts of fleeing the scene of an accident (one count for each of the four victims) into a single count. The applicable statute, Cal. Vehicle Code § 20001 (West 1994), resembles West Virginia's statute in providing that

> "[t]he driver of any vehicle involved in an accident resulting in injury to any person, other than himself or herself, ... *shall immediately stop the vehicle at the scene of the accident* and shall fulfill the requirements of Section [s] 20003...." Section 20003 requires that such a driver provide identifying information, render assistance to *"any person injured in the accident"* (§ 20003, subd. (a)), and, if requested, provide identifying documentation.

*Newton,* 66 Cal.Rptr.3d at 424 (emphasis added).

In *Newton,* the court analogized the issue raised therein to a previous case, *Wilkoff v. Superior Court,* 38 Cal.3d 345, 211 Cal.Rptr. 742, 696 P.2d 134 (Cal.1985), in which a drunk driver killed one person and injured five others. The driver was charged with six separate violations of California's driving while intoxicated statute, one for each victim. 66 Cal.Rptr.3d at 424. The Supreme Court of California in *Wilkoff* concluded that "although there were multiple victims, the violation constituted a single crime of driving while intoxicated." *Newton,* 66 Cal.Rptr.3d at 424 (citing *Wilkoff,* 38 Cal.3d at 353–54, 211 Cal.Rptr. 742, 696 P.2d 134) As the court in *Newton* explained,

> *Wilkoff* teaches that "a charge of multiple counts of violating a statute is appropriate

only where the actus reus prohibited by the statute—the gravamen of the offense—has been committed more than once. The act prohibited by section 233153 is the act of driving a vehicle while intoxicated and, when so driving, violating any law relating to the driving of a vehicle .... [T]he number of times the act is committed determines the number of times the statute is violated." The court held that, regardless of the number of persons injured, there can be but one act of driving while intoxicated. *Likewise, the conduct commanded by section 20001, to stop, identify, and assist, is only committed once.*

*Id.* (internal citations omitted) (emphasis added).

The court in *Newton* rejected the prosecution's argument that by requiring the rendering of assistance to "any person injured in the accident," the statute "contemplates that there may be more than one violation ... if more than one person is injured[,]" *id.,* and " 'refers to a separate duty being owed to each injured individual as opposed to referring to the collected group of injured people.' " *Id.* at 425. Instead, the court adopted "the more reasonable" interpretation of the statute, which is that a driver who flees the scene of an accident resulting in injuries to more than one person violates the applicable statute only once. *Id.*

As further support of its interpretation of the statute, the court in *Newton* looked to its purposes, which are "to prevent the driver of a vehicle involved in an injury-causing accident from leaving injured persons in distress and danger for want of medical care and from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself[.]" 66 Cal.Rptr.3d at 425. "But the statute's objective of providing assistance to injured persons would be satisfied by the furnishing of such assistance, whether the accident results in injuries to one person or to many." *Id.*

Similarly, in *Tooke v. Commonwealth,* 47 Va.App. 759, 627 S.E.2d 533 (2006), the defendant driver appealed his conviction of two counts of failure to stop at the scene of an accident. The accident occurred after the

defendant's vehicle forced an oncoming van to go off the road and crash, severely injuring the van's driver and her passenger. Like West Virginia's statute, under the applicable Virginia statute,

> [t]he driver of any vehicle involved in an accident in which a person is killed or injured ... shall immediately stop as close to the scene of the accident as possible ... and report his name, address, driver's license number, and vehicle registration number.... The driver shall also render reasonable assistance to *any person* injured in such accident[.]

Va.Code. Ann. § 46.2–894 (2005), in relevant part (emphasis added).

In reversing one of the two criminal convictions in *Tooke,* the Court of Appeals of Virginia reasoned that "[t]he gravamen of the offense under the statute is a single accident, regardless of the number of persons injured or the extent of the damages. Nowhere does the statute mention that failure to stop and assist each person involved in a single accident is a separate crime." 627 S.E.2d at 536. Further, the *Tooke* court relied on its prior case law construing the applicable statute which held:

> "The extent of the *property damaged* or the number of people injured or killed does not constitute an element of the offense. It is the flight from the scene, and the failure to give the information required to the person in charge of the property damaged or succor to the injured which constitute the completed offense."

4. These statutes are now cited as 625 Ill. Comp. State. Ann. 5/11–401 and 403 (1984).

5. As set forth in *Sleboda,* this language refers to that portion of Section 11–403, which provides:
If none of *the persons* entitled to information pursuant to this Section is in condition to receive and understand such information and no police officer is present, such driver after rendering reasonable assistance shall forthwith report such accident at the nearest office of a duly authorized police authority, disclosing the information required by this Section.
519 N.E.2d at 522.

6. *See Dake v. State,* 675 So.2d 1365 (Ala.Crim. App.1995) (reversing four convictions of Alabama's "leaving the scene of an accident" statute resulting from a single accident on ground that double jeopardy principles violated); *Hardy v. State,* 705 So.2d 979, 980, 981 (Fla.Dist.Ct.App.

*Id.* (quoting *James v. Commonwealth,* 178 Va. 28, 16 S.E.2d 296, 300 (1941)).

In *People v. Sleboda,* 166 Ill.App.3d 42, 116 Ill.Dec. 620, 519 N.E.2d 512 (1988), the defendant driver had been convicted of three counts of leaving the scene of an accident involving his car and two other automobiles. Three people in all died from their injuries. The language of the applicable statutes then in effect, 95 Ill. Comp. Stat. Ann. 1/ 2 ¶ 11–401 and 403 (1981),[4] required the driver of a vehicle involved in an accident resulting in injury or death to stop and remain at the scene and, in relevant part, to " 'render to any person injured in such accident reasonable assistance[.]' " *Sleboda,* 116 Ill.Dec. 620, 519 N.E.2d at 522 (quoting 95 Ill. Comp. Stat. Ann. 1/ 2 ¶ 11–403). The court in *Sleboda* concluded that

> the statute itself indicates that an individual can only be convicted once for leaving the scene of one accident since the focus is on remaining at the scene of the accident. Moreover, section 11–401 requires the fulfillment of obligations under section 11–403, which in turn refers to "persons entitled to information." [5] Thus, the statute itself recognizes that there may be several persons involved in one accident. *Therefore, while there may be several persons injured in an accident, there is only one accident scene at which the driver has a duty to remain.*

*Id.* (internal citation omitted and emphasis and footnote added).[6]

1998) (holding that convictions of two counts of leaving scene of accident involving death and one count of leaving scene of accident involving injury violated double jeopardy principles and that intended "unit of prosecution" for both offenses "is not the number of victims, but the number of accidents." " '[T]here was but one scene of the accident and one failure to stop;' thus, there was but one offense."); *Nield v. State,* 677 N.E.2d 79, 82 (Ind.Ct.App.1997) (concluding that essence of Indiana's statute imposes duties upon driver involved in accident to notify law enforcement authorities about accident, provide certain information, and render assistance to injured persons regardless of number of persons injured.); *Commonwealth v. Constantino,* 443 Mass. 521, 822 N.E.2d 1185, 1188 (2005) (holding that "unit of prosecution" under Massachusetts statute "is the act of leaving the scene of the accident, not the number of accident victims[ ]");

■ Based upon our interpretation of West Virginia Code § 17C–4–1, and in accordance with the majority of other jurisdictions, we hold that under West Virginia Code § 17C–4–1, a driver of any vehicle involved in an accident resulting in injury to or death of any person shall stop the vehicle at the scene of the accident or as close thereto as possible but then shall forthwith return to and shall remain at the scene of the accident until he or she has complied with the requirements of West Virginia Code § 17C–4–3. A driver who fails to comply with the requirements of West Virginia Code § 17C–4–3 violates West Virginia Code § 17C–4–1 only once regardless of the number of injuries or deaths resulting from the accident. Insofar as Appellant was convicted and sentenced on more than one violation of West Virginia Code § 17C–4–1, that portion of the circuit court's November 16, 2010, order is reversed.

### B. Admissibility of Appellant's blood alcohol content

■ Appellant's next assignment of error is that the trial court improperly denied his pre-trial motion to suppress evidence of his blood alcohol content because the blood samples were taken without his consent but pursuant to a search warrant, which, Appellant argues, is contrary to this Court's decision in *State v. McClead*, 211 W.Va. 515, 566 S.E.2d 652 (2002).

In *McClead*, following the defendant driver's arrest for DUI, the arresting officer read to him the West Virginia Implied Consent Form and requested that the defendant submit to a chemical breath test. The defendant refused and then also refused the officer's request that he submit to a blood test. According to *McClead*, the defendant eventually consented to a blood test but only after he learned that the officer intended to seek a

search warrant to obtain a sample of his blood. The blood test revealed a blood alcohol content of .17 and, ultimately, the defendant was convicted of, inter alia, DUI.

On appeal, although the defendant in *McClead* argued that the trial court should have suppressed the blood test results because he had a right to speak with an attorney before deciding whether to consent to the blood test, this Court reversed the DUI conviction on an issue neither raised nor argued by either party. This Court, *sua sponte*, concluded that the arresting officer improperly informed the defendant that a search warrant could be used to obtain his blood. More specifically, this Court declared that West Virginia Code § 17C–5–4 *"does not* authorize the issuance of a warrant to compel the taking of blood from an arrestee who refuses to voluntarily take a blood test." 211 W.Va. at 518, 566 S.E.2d at 655.

West Virginia Code § 17C–5–4 (2001) provides, in relevant part:

(a) Any person who drives a motor vehicle in this state is deemed to have given his or her consent by the operation of the motor vehicle to a preliminary breath analysis and a secondary chemical test of either his or her blood, breath or urine for the purposes of determining the alcoholic content of his or her blood.

(b) A preliminary breath analysis may be administered in accordance with the provisions of section five [§ 17C–5–5] of this article whenever a law-enforcement officer has reasonable cause to believe a person has committed an offense prohibited by section two [§ 17C–5–2] of this article or by an ordinance of a municipality of this state which has the same elements as an offense described in section two [§ 17C–5–2] of this article.

*Firestone v. State*, 120 Nev. 13, 83 P.3d 279, 282 (2004) (holding that violation of applicable Nevada statute "does not depend on the number of people injured. . . . Since there was only one accident, and one 'leaving,' the statute allows only one charge of leaving the scene of an accident, regardless of the number of people involved.").
We recognize, but are not persuaded by, the holdings of a minority of courts which are contrary to our holding herein. In *Spradling v. State*, 773 S.W.2d 553, 557 (Tex.Crim.App.1989),

a three to three decision by the Court of Criminal Appeals of Texas, the court interpreted statutory language similar to West Virginia's requiring "one to render assistance to 'any person injured' . . . . to mean that one must render assistance to all injured persons at the scene. Therefore, a person who renders aid to three out of four injured persons is still exposed to liability under the statute[.]' " (quoting *State v. Hartnek*, 146 Wis.2d 188, 430 N.W.2d 361, 363 (Wisc.Ct.App.1988)).

(c) A secondary test of blood, breath or urine is incidental to a lawful arrest and is to be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person has committed an offense prohibited by section two [§ 17C–5–2] of this article or by an ordinance of a municipality of this state which has the same elements as an offense described in section two of this article.

(d) The law-enforcement agency that employs the law-enforcement officer shall designate which type of secondary test to be administered: Provided, That if the test designated is a blood test and the person arrested refuses to submit to the blood test, then the law-enforcement officer making the arrest shall designate either a breath or urine test to be administered. Notwithstanding the provisions of section seven [§ 17C–5–7] of this article, the refusal to submit to a blood test only may not result in the revocation of the arrested person's license to operate a motor vehicle in this state.[7]

(footnote added).

Furthermore, West Virginia Code § 17C–5–7(a) (1986) states, in relevant part, that

(a) If any person under arrest as specified in section four [§ 17C–5–4] of this article refuses to submit to any secondary chemical test, *the tests shall not be given:* Provided, That prior to such refusal, the person is given a written statement advising him that his refusal to submit to the secondary test finally designated will result in the revocation of his license to operate a motor vehicle in this state for a period of at least one year and up to life.

(emphasis added).

Based upon the language in West Virginia Code § 17C–5–7(a) that " '[i]f any person

under arrest [for DUI] refuses to submit to any secondary chemical test, the tests shall not be given[,]' " this Court, in *McClead,* concluded that, given the defendant's initial refusal to consent to a blood test, "no statutory authority exists for a police officer to obtain a warrant to extract blood from a DUI arrestee.[.]" [8] 211 W.Va. at 518, 566 S.E.2d at 655.

As indicated above, Appellant contends that, under *McClead,* evidence of his blood alcohol content should not have been admitted at trial. However, upon further consideration of the issue, this Court is now of the opinion that *McClead* expanded the scope of West Virginia Code § 17C–5–7 beyond its intended purpose. Indeed, it has been explained that

[t]he implied consent law does just that—it implies a suspect's consent to a search in certain instances. This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search. On the other hand, if the State has a valid search warrant, it has no need to obtain the suspect's consent.

The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant. *But once a valid search warrant is obtained by presenting facts establishing probable cause to a neutral and detached magistrate, consent, implied or explicit, becomes moot.*

*Beeman v. State,* 86 S.W.3d 613, 615–16 (Tex. Crim.App.2002) (Emphasis and footnote added; footnote omitted)

an arrestee refuses a blood test[,][it] *does not* authorize the issuance of a warrant to compel the taking of blood from an arrestee who refuses to voluntarily take a blood test." *Id.*

**8.** We further concluded that, under the facts of *McClead,* the defendant's "consent to the blood test was [not] voluntary as it was clearly secured by use of a coercing threat to obtain a search warrant." 211 W.Va. at 519, 566 S.E.2d at 656.

---

**7.** In *McClead,* we were apparently persuaded by that portion of West Virginia Code § 17C–5–4(d) providing that if the designated test is a blood test " 'and the person arrested refuses to submit to the blood test, then the law-enforcement officer making the arrest shall designate either a breath or urine test to be administered.' " 211 W.Va. at 518, 566 S.E.2d at 655 (quoting W.Va. Code § 17C–5–4(d)). We explained that although West Virginia Code § 17C–5–4(d) "provides for the use of alternative chemical testing if

In *State v. Smith*, 134 S.W.3d 35 (Mo.Ct. App.2004), the Missouri Court of Appeals held that "the clause, 'none shall be given,' in the refusal provision of [Missouri's] Implied Consent Law ... prohibits *warrantless* tests authorized *by law enforcement officers* pursuant to Chapter 577, but does not prohibit *a court* from issuing a search warrant to obtain samples of a defendant's blood for chemical testing." *Id.* at 36 (emphasis added). According to the court in *Smith,* the "refusal" provision in Missouri's Implied Consent Law provides, in relevant part, that " '[i]f a person under arrest, or who has been stopped ... refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given[.]' " *Id.* at 39. In rejecting the defendant driver's argument that the foregoing refusal provision "prohibits a compelled blood sample from being obtained by warrant," the court found that due to "the use of the passive voice in the clause 'none shall be given' ... [it] does not specify *who* is prohibited from giving a test." *Id.* at 40. The court proceeded to analyze the context and related clauses of the statute and determined that "the only actor to whom this clause can be directed is a law enforcement officer. This is because the tests allowed pursuant to Section 577.020 are those 'administered at the direction of the law enforcement officer.' " *Id.* (quoting Mo. Rev.Stat. § 577.020.1). The *Smith* court explained that

> [t]he Missouri Implied Consent Law was enacted to codify the procedures under which a law enforcement officer could obtain bodily fluids for testing by consent without a search warrant. It provides administrative and procedural remedies for refusal to comply. *Because it is directed only to warrantless tests authorized by law enforcement officers, it does not restrict the state's ability to apply for a search warrant to obtain evidence in criminal cases* [.]

*Id.* (emphasis added).

■ Applying this same logic to our implied consent statutes—specifically, West Virginia Code §§ 17C–5–4 and –7, set forth above—we find that the passive phrase "the tests shall not be given" in West Virginia

Code § 17C–5–7 does not specify *who* shall not give the tests. "A cardinal rule of statutory interpretation is that code sections are not to be read in isolation but construed in context." Syl. Pt. 2, *In re Estate of Lewis,* 217 W.Va. 48, 614 S.E.2d 695 (2005). Furthermore, " '[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.' Syllabus Point 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975)." *Estate of Lewis,* at syl. pt. 3, 217 W.Va. at 49–50, 614 S.E.2d at 696. Accordingly, we find that the phrase "the tests shall not be given" in West Virginia Code § 17C–5–7 to be directed to law enforcement officers because the allowable tests under West Virginia Code § 17C–5–4 and to which West Virginia Code § 17C–5–7 refers are administered by or at the direction of law enforcement officers. Thus, once a test is refused, a law enforcement officer is without authority to administer it. However, the phrase "the tests shall not be given" does not restrict the State's ability to seek a search warrant to obtain evidence (including blood samples) in criminal traffic offense cases.

In so ruling, we are thus mindful that "implied consent laws have historically been viewed as an effort on the part of the state to decrease the damage to persons and property arising from drivers operating motor vehicles while under the influence of intoxicating liquor." *Jordan v. Roberts,* 161 W.Va. 750, 754, 246 S.E.2d 259, 262 (1978). *See Mitchell v. Cline,* 186 W.Va. 332, 335, 412 S.E.2d 733, 736 (1991). Accord *People v. Jordan,* 75 Cal.App.3d Supp. 1, 142 Cal.Rptr. 401, 408 (Cal.App.Dept.Super.Ct.1977) (stating that "while the immediate purpose of the implied consent law is to obtain the best evidence of blood-alcohol content, the long range purpose is to inhibit intoxicated persons from driving upon the highways and thus reduce the carnage and slaughter on the highways"); *Peo-*

*ple v. Campbell,* 236 Mich.App. 490, 601 N.W.2d 114, 118 (1999) (declaring that implied consent laws created with intention of obtaining "the best evidence of blood alcohol content at the time of the arrest" and "ultimately, 'to prevent intoxicated persons from driving on the highways.'" (internal citation omitted)); *State v. Abrahamson,* 328 N.W.2d 213, 215 (N.D.1982) (recognizing purpose of "'implied consent law is to discourage individuals from driving an automobile while under the influence of intoxicants; to revoke the driving privileges of those persons who do drive while intoxicated; and to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication.'" (internal citation omitted)).

■ We hold, therefore, that under West Virginia Code § 17C–5–4, any person who drives a motor vehicle in this state is deemed to have given his or her consent by the operation of the motor vehicle to a preliminary breath analysis and a secondary chemical test of either his or her blood, breath or urine for the purpose of determining the alcoholic content of his or her blood. Pursuant to West Virginia Code § 17C–4–7, if any person under arrest as specified in West Virginia Code § 17C–5–4 refuses to submit to any secondary chemical test, the tests shall not be given except pursuant to a valid search warrant. To the extent our previous decision of *State v. McClead* is inconsistent with this holding, it is hereby overruled.[9]

### C. Sufficiency of the Evidence

Appellant's final assignment of error is that the circuit court committed error in denying his post-trial motion for acquittal or, in the alternative, a new trial. It is Appellant's contention that the State failed to produce sufficient evidence to convict him of DUI causing death and leaving the scene of an accident causing injury or death.

■ It is well settled that this Court's standard of reviewing claims of insufficiency of the evidence places a heavy burden on a criminal defendant.

"The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. Juntilla,* 227 W.Va. 492, 711 S.E.2d 562 (2011).

"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. Pt. 3, in part, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

*Juntilla,* at syl. pt. 2, 227 W.Va. at 494, 711 S.E.2d at 564.

In the case *sub judice,* Appellant argues that the State failed to prove beyond a reasonable doubt that he violated West Virginia Code § 17C–5–2(a), DUI causing death.

---

9. We are aware that there are other jurisdictions which have held that the refusal provisions in their respective states' informed consent laws operate to preclude chemical testing if refused, regardless of whether a search warrant has been procured. See eg., *State v. Adee,* 241 Kan. 825, 740 P.2d 611 (1987); *State v. Hitchens,* 294 N.W.2d 686 (Iowa 1980); *State v. Bellino,* 390 A.2d 1014 (Me.1978); *State v. DiStefano,* 764 A.2d 1156 (R.I.2000).

West Virginia Code § 17C–5–2(a) provides, in relevant part:

(a) Any person who:

(1) Drives a vehicle in this state while he or she:

(A) Is under the influence of alcohol;

.... or

(E) Has an alcohol concentration in his or her blood of eight hundredths of one percent or more, by weight; and

(2) When so driving does any act forbidden by law or fails to perform any duty imposed by law in the driving of the vehicle, which act or failure proximately causes the death of any person within one year next following the act or failure; and

(3) *Commits the act or failure in reckless disregard of the safety of others,* and when the influence of alcohol ... is shown to be a contributing cause of the death, is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than one year nor more than ten years and shall be fined not less than one thousand dollars nor more than three thousand dollars.

(emphasis added).

■■■ It is Appellant's contention that the State failed to prove that portion of West Virginia Code § 17C–5–2(a) requiring that Appellant have acted "in reckless disregard of the safety of others," when his truck hit the vehicle driven by Mr. Evans, causing it to shoot across the median and into the SUV driven by Mr. Perry. Appellant argues that the testimony of Mr. Greathouse did not establish with certainty that Appellant was exceeding the speed limit when the accident occurred and, as Appellant testified, he believed that he lost control of his truck because his right front tire had blown out.

We are not persuaded by Appellant's argument. Reviewing the evidence in the light most favorable to the prosecution, we conclude that any reasonable trier of fact could have found the essential elements of West Virginia Code § 17C–5–2(a), including that Appellant acted in reckless disregard for the safety of others, proved beyond a reasonable doubt. The evidence at trial revealed that Appellant was driving close to ninety miles

per hour when his truck passed Mr. Greathouse's vehicle even though there was only a car length's distance between Mr. Greathouse's vehicle and the vehicle being driven by Mr. Evans. Witness Jamie Porter observed Appellant attempt to "shimmy" his truck through to the left lane. Furthermore, Appellant's novel theory that his right front tire had blown out causing him to lose control of his truck was in no way supported by the objective physical evidence presented at trial. The jury clearly found the testimony of Mr. Greathouse and Ms. Porter to be credible, and Appellant's testimony to be lacking in credibility. Such credibility determinations will not be disturbed by this Court on appeal.

■■■ Appellant also argues that the State failed to produce sufficient evidence at trial that he violated West Virginia Code § 17C–4–1, which, as previously discussed herein, requires a driver involved in an accident resulting in injury or death to stop, remain at the accident scene and comply with the requirements of West Virginia Code § 17C–4–3. Appellant contends that implicit in West Virginia Code § 17C–4–1 is the requirement that a driver have actual knowledge that an accident has occurred. He argues that, in this case, the State failed to prove that he possessed such knowledge. Appellant contends that the evidence at trial proved that his truck came to a stop in a culvert 200 yards from the accident scene; that it was dark; and that his view of the site was obscured. Thus, Appellant argues, because he did not know an accident had occurred, the evidence was insufficient to prove that he committed the offense of leaving the scene of the accident resulting in injury or death, in violation of West Virginia Code § 17C–4–1.

Reviewing the evidence in the light most favorable to the State, we conclude there was sufficient evidence to prove, beyond a reasonable doubt, that Appellant violated West Virginia Code § 17C–4–1. According to Appellant's own testimony, he knew that when he "counter-steered" in order to stay on the highway, his truck then hit the vehicle being driven by Mr. Evans. Appellant's own truck then rolled at least once before landing in a culvert. Appellant was found hitchhiking in the opposite direction of the accident scene, having just walked away from his truck but leaving its engine running, lights on, and in

gear. The jury clearly inferred from this evidence that Appellant, while in a highly intoxicated state, hurriedly abandoned his truck and walked away from the scene of the accident because it was he who had just caused it after driving his truck into Mr. Evans' vehicle. Reviewing this evidence and crediting all inferences and credibility assessments that the jury might have drawn in favor of the State, we conclude that the evidence was clearly sufficient to sustain Appellant's conviction of leaving the scene of the accident, in violation of West Virginia Code § 17C–4–1.

## IV. Conclusion

Based upon the foregoing, the November 16, 2010, order of the Circuit Court of Monongalia County, is hereby affirmed, in part; reversed, in part; and remanded for re-sentencing relating to West Virginia Code § 17C–4–1 consistent with the principles set forth in this opinion.

Affirmed, in part; Reversed, in part; and Remanded, with instructions.