# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

May 17, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-0127** (Monongalia County 10-F-108)

**Daniel F. Slonaker,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Daniel F. Slonaker, by counsel W. Chad Noel, appeals the Circuit Court of Monongalia County's order entered August 19, 2011, denying petitioner's motion for a new trial and sentencing him. Respondent State of West Virginia, by counsel, has filed its response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 6, 2010, petitioner was indicted on three counts of sexual assault in the second degree, charging him with sexual intercourse with the victim, sexual intrusion by digital penetration, and sexual intrusion by oral means. On February 18, 2011, after a three-day trial, petitioner was found guilty on all three counts. At the close of the State's case, petitioner moved for judgment of acquittal, which motion was denied. The victim in this matter, K.S., testified at trial. She admitted that on the night in question she had been drinking "a lot" while on prescribed medications Adderall and Prozac, and that she had no memory of the actual sexual assault. A witness to the assault testified that he saw petitioner on top of K.S., K.S. was trying to get up and was saying "no," and petitioner was holding her down. Petitioner was making thrusting motions toward K.S., and this witness indicated they were having sex. The witness then engaged the blue emergency light in the alley to notify law enforcement, and testified that K.S. began kicking violently at petitioner and telling him to get off of her. Petitioner then attempted to get K.S.'s telephone number, but bystanders told him to leave her alone. Two other bystanders followed petitioner when he attempted to leave the area. The first witness later called 911 from a pay phone and gave a statement to an officer who arrived. One of the bystanders testified that he arrived at the scene after he and another bystander heard a scream. He states that he saw petitioner pulling up his pants and K.S. was "bent over and exposed." One bystander testified that the other bystander pushed petitioner off K.S. and K.S. ran to the first bystander.

1

Morgantown Police Officer James William Smith II testified that he responded to the call, at which time the two bystanders identified petitioner as the perpetrator. K.S. could not respond properly to his questions due to her intoxication. Smith then called in a female officer who also indicated that K.S. was so intoxicated that she could barely speak. The emergency room physician, Dr. Whiteman, also testified, stating that K.S. was hysterical when she arrived at the hospital and that he did not believe that K.S. was competent to consent to an evidence collection kit upon arrival due to her intoxication. Morgantown Detective Lawrence Hasley testified that he took petitioner's statement, collected several DNA swabs from petitioner's body, and then went to the hospital to observe K.S., where he took additional swabs from her body. The forensic analyst testified that she found DNA from both petitioner and K.S. on petitioner's penis. Petitioner testified in his own defense, stating that he performed consensual oral sex on K.S. on the ground, but denied any other type of sex. He testified that K.S. never told him no or asked him to stop, but admitted that he knew K.S. was severely intoxicated.

On March 7, 2011, petitioner filed a "Motion for New Trial" on the basis of the sufficiency of the evidence as to the elements of "lack of consent" on all counts and to the charge of "sexual intercourse" as to Count 1. A hearing was held on August 10, 2011, and the circuit court denied the motion. Petitioner was sentenced to three concurrent sentences of ten to twenty-five years of incarceration, and Count 3 was enhanced pursuant to the recidivist statute to life in prison with the possibility of parole.

On appeal, petitioner asserts a single assignment of error, arguing that the circuit court committed reversible error when it failed to grant a judgment of acquittal at the close of the State's case-in-chief, and again when the insufficiency of evidence issues were raised post-trial. Petitioner argues that the State's evidence as to the elemental issue of the victim's lack of consent was insufficient to sustain convictions on all three charges. Petitioner argues that K.S. was a willing participant, and that, despite her level of intoxication, she was never physically helpless and that she initiated the sexual contact. Petitioner also argues that the issues of "sexual intercourse" and "sexual intrusion" were insufficient to sustain a conviction on the same. He states that there was no evidence of penetration of the labia or external lips of the female vulva, as he testified he could not achieve an erection. Further, no semen was found on K.S.'s panties or at the scene. A sex crimes kit was never produced because K.S. did not consent to the same. Petitioner states that only one of the four penis swabs taken tested positive for her DNA, but he argues that this does not prove sexual intercourse.

"'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011). Moreover, in reviewing criminal convictions on appeal, we have held as follows:

> "'The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable

2

to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.' Syl. Pt. 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995)." Syl. Pt. 1, *State v. Juntilla,* 227 W.Va. 492, 711 S.E.2d 562 (2011).

Syl. Pt. 8, *State v. Stone*, 229 W.Va. 271, 728 S.E.2d 155 (2012).

"'A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. [] Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.' Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995)." Syl. Pt. 2, *State v. Juntilla,* 227 W.Va. 492, 711 S.E.2d 562 (2011).

Syl. Pt. 9, *Stone*.

This Court concludes that there was sufficient evidence to convince a reasonable person of petitioner's guilt beyond a reasonable doubt; thus, the trial court correctly denied the motions for judgment as a matter of law and for a new trial. There was a plethora of evidence that K.S. was incapable of consenting to any sexual activity with petitioner and that she explicitly denied consent. Moreover, this Court agrees with the State's argument that there was ample evidence from which the jury could conclude that sexual intercourse or intrusion occurred. The witness saw K.S. nude from the waist down and saw petitioner "thrusting" against her and what he described as "climaxing." He stated that he saw petitioner having sex with K.S. Moreover, swabs from petitioner's penis shaft contained K.S.'s DNA, and there is no evidence, even in petitioner's statements and testimony, that K.S. touched his penis in any way.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II