No. 12-0256 - <u>State of West Virginia v. Ronald Goins</u>

**FILED**

**September 12, 2013**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, concurring:

I agree with the majority's conclusion that the petitioner's multiple convictions of brandishing may not be upheld on the basis of the number of victims present when he discharged his weapon. Moreover, I agree that the operable "unit of prosecution" under West Virginia Code § 61-7-11 (1994) is a "breach of the peace" occasioned when a defendant "carr[ies], brandish[es], or use[s]" a firearm or other deadly weapon. And while I do not believe that the evidence adduced at the petitioner's trial was sufficient to justify multiple convictions of brandishing, I disagree strongly with the majority's conclusion, albeit *dicta*, that multiple violations of the brandishing statute cannot occur when a defendant fires multiple shots from a firearm. The majority dismissively characterizes this position as "absurd," without so much as a hint of analysis or supporting case law.

The majority undertakes a proper analysis of our prior cases which gives direction as to determining the "unit of prosecution" for Double Jeopardy purposes and concludes, properly, that the number of victims is irrelevant to the number of offenses which may be charged under the brandishing statute—a conclusion this Court had already reached

1

in *State v. Kendall*, 219 W. Va. 686, 639 S.E.2d 778 (2006).[1] In so doing, it gives short shrift to the State's more compelling argument that the petitioner's conviction should be upheld on the basis of the number of shots fired and thereby overlooks a remarkably similar case recently authored by Justice Workman which presents a thorough and well-reasoned analysis of precisely this issue.

In *State v. McGilton,* 229 W.Va. 554, 729 S.E.2d 876 (2012), the defendant stabbed his wife numerous times during an argument in their home, resulting in his conviction of multiple counts of malicious assault. On appeal, McGilton asserted that conviction of three counts of malicious assault for three stab wounds inflicted during the same course of conduct violated Double Jeopardy. In addressing this issue, the Court quickly isolated and highlighted the necessary analysis for determining if multiple, discrete acts that occur during a short period of time may sustain multiple convictions:

> He [McGilton] would have this Court make an ironclad ruling that as a matter of law anytime a person is stabbed multiple times, by the same person, within a short period of time, that the perpetrator of the crime can only be guilty of one malicious assault. Moreover, the petitioner asks this Court to make such

---

[1]This Court recently reached a similar conclusion in *State v. Stone*, 229 W.Va. 271, 728 S.E.2d 155 (2012), holding that a defendant who leaves the scene of an accident where there are multiple victims can be charged for only one violation of W. Va. Code § 17C-4-1. In *Stone*, the Court focused on the particular language of the statute which requires one to render aid to "any person injured in [an] accident," concluding that "any" connoted a Legislative intent to prosecute only one violation of the statute regardless of multiple victims. *Id*. at 278, 728 S.E.2d at 162. The Court further found such construction in accord with a majority of other jurisdictions. *Id*. *Stone*, however, did not address the issue of whether successive, discrete violations of the statute would support multiple convictions.

> a conclusion *regardless of the specific circumstances of the crime and irrespective of whether a perpetrator actually formed the requisite intent each and every time he or she committed a separate malicious assault of a victim.*

*Id.* at 561, 729 S.E.2d at 883 (emphasis added). We noted that our prior decisions demonstrate that "multiple convictions are appropriate where a defendant performs *separate* acts that would support *different* violations of the *same* statute." *Id.* at 565, 729 S.E.2d at 887 (emphasis added). We found unavailing the notion that a perpetrator could systematically maim or disfigure a victim with successive actions "*each time forming the requisite intent*," yet elude more than one charge of malicious assault. *Id*. at 566, 729 S.E.2d at 888. Other courts have similarly found that rewarding a defendant who chooses to commit additional acts, rather than "limit[ing] his or her criminal activity" merely "encourages additional criminal activity." *Id.* Rejecting a similar argument in the context of multiple sexual assaults, the Court of Appeals of Virginia found that a defendant should not be permitted a "free rape" where each rape was "readily divisible[,]" and the defendant simply "cho[se] to repeat his crime on the same victim within a short period of time." *Carter v. Commonwealth*, 428 S.E.2d 34, 42 (Va. Ct. App. 1993). To that same end, we concluded in *McGilton* that:

> it is not a reasonable reading of this [malicious assault] statute to conclude that a perpetrator can only be charged with one malicious assault simply because he or she managed to stab a victim multiple times very quickly—regardless of whether or not the elements of the crime were committed separately, distinctly, and contemporaneously with each stabbing.

229 W. Va. at 566, 729 S.E.2d at 888. We therefore held that

> [a] defendant may be convicted of multiple offenses of

3

malicious assault under West Virginia Code § 61–2–9(a) (2004) against the same victim even when the offenses were a part of the same course of conduct. Such convictions do not violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution *as long as the facts demonstrate separate and distinct violations of the statute*.

Syl. Pt. 9, *id.* (emphasis added).

Our brandishing statute provides that "[i]t shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to *carry, brandish or use* such weapon in a way or manner to cause, or threaten, *a breach of the peace*." W. Va. Code § 61-7-11 (emphasis added). Like our malicious assault statute addressed in *McGilton,* there is no language in our brandishing statute that would preclude a second charge of brandishing when a second brandishing actually occurs within a short period of time, complete with the requisite separately formed intent. *See, e.g., Kendall,* 219 W.Va. at 696, 639 S.E.2d at 788. ("There did not appear to be any evidence of *multiple acts of brandishing* or specific instances of threats against separate individuals." (emphasis added)). Both the conduct—"to carry, brandish or use" a firearm or deadly weapon—and the result of the conduct—a breach of the peace—are phrased in singular terms, evidencing "a legislative intent to punish each violation of the statute separately." *McGilton,* 229 W. Va. at 566, 729 S.E.2d at 888. Certainly, the firing of a single shot may constitute an unlawful "use" of a firearm which results in a breach of the peace. There is quite simply no reason why additional shots—all of which are complete and discrete singular acts which likewise

4

cause separate and distinct breaches of the peace—should not constitute additional violations of the statute where a jury finds a separately formed intent.

Without question, the notion that multiple shots from a firearm may constitute complete and distinct offenses is widely recognized, *to the extent that the requisite intent was formed each time*. As articulated in *Stephens v. Commonwealth,* 543 S.E.2d 609, 612 (Va. Ct. App. 2001), "[e]ach act of firing the weapon constituted a separate, distinct act, notwithstanding how closely the second shot followed the first. Each shot required a conscious decision [] to pull the trigger." *See also State v. Rambert*, 459 S.E.2d 510, 513 (N. C. 1995) ("[D]efendant's actions were three distinct and, therefore, separate events. Each shot . . . required that defendant employ his thought processes each time he fired the weapon."); *State v. Miranda*, 10 P.3d 1213, 1217 (Ariz. Ct. App. 2000) (holding that three successive shots supported three separate convictions); *Gray v. United States*, 585 A.2d 164, 165 (D.C. 1991) (holding that as to three separate shots into a dwelling, each shot constituted a separate offense); *People v. Harris*, 695 N.E.2d 447, 457 (Ill. 1998) (finding as to two consecutive shots into a vehicle each shot constituted a "discrete physical act"); *State v. Morrow*, 888 S.W.2d 387, 392–93 (Mo. Ct. App. 1994) ("The conduct proscribed is complete on one shot. A subsequent shot, whether moments or a substantial amount of time later, creates the same danger which the statute was intended to prevent.").[2]

---

[2]*See also Blockberger v. United States,* 284 U. S. 299 (1932). Although, as explained in *McGilton*, the *Blockberger* analysis is inapplicable to multiple convictions under the same statute, the *Blockberger* Court nevertheless reiterated the above-described concept:

That said, I agree, however, under the evidence presented in the underlying case, that such a conviction cannot stand. Quite simply, the State did not offer proof beyond a reasonable doubt that the petitioner breached the peace with five separate shots, each time forming the requisite intent required under the brandishing statute. Moreover, neither the indictment nor jury instructions, which were all phrased in terms of individual victims, permits this Court to conclude otherwise. It is a dangerously overreaching conclusion, however, to insist that because the evidence adduced below in this particular case did not sustain multiple convictions, that the statute would not support such convictions were satisfactory evidence adduced; certainly, *McGilton* instructs otherwise. Regardless, it is precisely this conclusion that the majority summarily reaches, without undertaking the same "unit of prosecution" analysis to which it dedicates the remainder of its opinion to form the basis of its partial reversal.

Notwithstanding the foregoing and for the reasons stated herein, I respectfully concur in the majority's holding and decision to reverse four counts of brandishing and remand for resentencing. I am authorized to state that Justice Workman joins in this concurrence.

---

"'[W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.'" *Id.* at 302.

6